lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **RICHARD PHILLIP ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07-3017-JAR** |
| | ) | |
| **DEBBIE BRATTON, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On November 30, 2007, the Court converted defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 16) into a motion for summary judgment, as the parties relied on documents outside of the Complaint.  In compliance with Fed. R. Civ. P. 12(b), the Court provided plaintiff Richard Anderson with notice and additional time to present materials made pertinent under Fed. R. Civ. P. 56.  Plaintiff has responded with additional evidence and an affidavit to support his allegations, so the motion is ripe for adjudication.  As explained more fully below, the Court grants defendants' motion in part and denies it in part.

## I.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1]  A fact is only material under this standard if a dispute over it would affect the outcome

---

[1]Fed. R. Civ. P. 56(c).

of the suit.[2]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[3]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[4]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[5]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[6]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[7]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[8]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[9]

Additionally, because plaintiff is a *pro se* litigant, the Court must construe his pleadings

---

[2]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3]*Id.*

[4]*Id.* at 251–52.

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325)).

[7]*Id.*

[8]*Id.*

[9]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

2

liberally and apply a less stringent standard than that which is applicable to attorneys.[10]
However, the Court may not provide additional factual allegations "to round out a plaintiff's
complaint or construct a legal theory on a plaintiff's behalf."[11]  The Court need only accept as
true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[12]
Additionally, a *pro se* litigant is not excused from complying with the rules of the Court and is
subject to the consequences of noncompliance.[13]

## II.     Uncontroverted Facts

The following facts are primarily established by the plaintiff's Complaint, the *Martinez*
Report, and attachments thereto.  Plaintiff is currently incarcerated at the El Dorado Correctional
Facility ("EDCF"), in the custody of the Secretary of Corrections.  Defendant Bratton is
employed as the Deputy Warden of Operations at EDCF.  Defendant Biby is employed as the
Chaplain at EDCF.

In May 2006, plaintiff, an active member of the EDCF Assembly of Yahweh, made a
formal request that the Assembly be permitted to celebrate its "annual fall festivals" with certain
food items and a banquet.  These requests are summarized as follows:

> "Feast of Trumpets," to be observed September 23, 2006, from
> 12:00 to 2:30 p.m.  The Assembly of Yahweh requested a special
> food request of strawberry shortcake, ice cream, whipped cream
> and ginger ale;
>
> "Feast of Tabernacles," to be observed October 7 through 13,

---

[10]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[11]*Id.*

[12]*Hall v. Bellmon*,  935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

[13]*Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277
(10th Cir. 1994)).

> 2006.  During this time all meals will be eaten outside in the
> tabernacle booth, with an extended meal time of an hour per meal
> to eat, drink, pray and study.  The Assembly requested approval
> for a banquet to be held on October 8, 2006, from 5:00 to 8:00
> p.m., and requested a special meal of barbeque beef ribs, salad, ice
> cream, cheesecake, and soft drinks; and
>
> "Last Great Day," to be observed October 14, 2006, from 12:00 to
> 2:30 p.m.  The Assembly of Yahweh requested approval to
> purchase cheese pizzas from the visitation food stand.

Defendants approved all three special religious observance requests and extended worship time.

Defendants denied the requests for special food; instead, the common fare meal would be served

on each date.

Plaintiff's request was denied pursuant to EDCF General Order 23-103 because plaintiff

failed to show the requested food items are tenets of the Jewish faith when celebrating the

various festivals.  Under that general order, all religious groups are permitted one annual feast; if

a religious group wishes to have more than one feast, it must be a mandated tenet in the KDOC

religious handbook.  EDCF General Order 23-103 references KDOC Internal Management

Policy and Procedures ("IMPP") 10-108 and IMPP 10-110, which designate policies for

religious banquets.  Attachment D to IMPP 10-110 is a Reference Table of Religious Tenets.

Assembly of Yahweh is identified as a religious group, with its primary text the "Sacred Name

Text."  The dietary requirements are listed as Kosher, and holidays observed are listed as

Passover, Days of Unleavened Bread, Pentecost, Feast of Weeks, Feast of Trumpets, Day of

Atonement, and Feast of Tabernacles.  The table does not identify any specific requirements,

dietary or otherwise, for these holidays.

Plaintiff filed a "Bid for Reconsideration," arguing that the Assembly of Yahweh

observes the commanded festivals with food in the form of banquets.  By denying the requests

for special foods, plaintiff asserted that defendants infringed on the Assembly of Yahweh's right to practice its faith as scripturally mandated, citing Deuteronomy 14:26: ". . . for whatever your heart desires.  And you shall eat there before Yahweh your mighty one, and you shall rejoice." Plaintiff followed with a grievance, which was also denied.

Plaintiff has submitted as evidence a booklet entitled "Biblical Holy Days," which references the scripture cited by plaintiff, as well as an Affidavit in which plaintiff avers as to the sincerity of his belief that the inclusion of celebratory food in festival observance is a scriptural requirement.

## III.   Analysis

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[14]  The Court addresses each claim in turn.

### A.   First Amendment

Plaintiff contends that the defendants' decision regarding the provision of special foods during certain religious observances was a violation of the Free Exercise Clause of the First Amendment.  Defendants assert that plaintiff has failed to demonstrate that they denied him a diet in conformance with his religious beliefs or that he was denied the opportunity to celebrate the "Feast of Trumpets," "Feast of Tabernacles," and "Last Great Day."

It is well established that a prisoner has a First Amendment right to a diet conforming to his sincerely held religious beliefs.[15]  Although a prisoner retains the First Amendment right to

---

[14]42 U.S.C. § 2000cc-1.

[15]*Beerhide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002).

religious freedom while incarcerated, prison officials may place certain restrictions on the exercise of that right in order to advance "valid penological objectives."[16]

The Tenth Circuit recently reaffirmed that prison regulations are distinguishable from other laws alleged to violate fundamental constitutional rights, and must be judged under a less restrictive reasonableness test.

> . . . we are mindful of the delicate balance that has been recognized between prisoners' constitutional guarantees and the legitimate concerns of prison administrators.  In *O'Lone v. Estate of Shabazz*, the Supreme Court acknowledged that although "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," convicted prisoners nonetheless "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." The Court emphasized, however, that in evaluating a challenged prison regulation, appropriate deference must be afforded to prison administrators "who are actually charged with and trained in the running of the particular institution under examination." Accordingly, the Court distinguished prison regulations from other laws alleged to violate fundamental constitutional rights, holding that the former must be judged under a less restrictive reasonableness test: "'[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'"[17]

In order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry.  First, the prisoner-plaintiff must show that a prison regulation "substantially burdened" his sincerely-held religious beliefs.[18]  Consequently, "[t]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature,

---

[16]*O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

[17]*Boles v. Neet*, 486 F.3d 1177, 1180-81 (10th Cir. 2007) (internal quotations and citations omitted).  *See Kay v. Bemis*, 500 F.3d 1214 (10th Cir. 2007).

[18]*Boles*, 486 F.3d at 1182.

6

and whether those religious beliefs are sincerely held."[19]  If that showing is made, prison officials may identify the legitimate penological interests that justify the impinging conduct. Thereafter, the burden returns to the prisoner to "show that these articulated concerns were irrational."[20]  At that point, courts balance the factors set forth in *Turner v. Safley*[21] to determine the reasonableness of the regulation:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.[22]

The Court denies defendant's motion on this claim.  Plaintiff's Complaint clearly identifies his religion as "Assembly of Yahweh."  Taking the factual allegations in the light most favorable to plaintiff, enough factual support exists to rationally and plausibly conclude that plaintiff is a sincere devotee of the Assembly of Yahweh faith.  Plaintiff persistently asked prison administrators for permission to have special foods at various festivals identified as celebrations of his faith, which were consistently denied but for one banquet per year permitted each religious group.  Notably, defendants state in their memorandum in support of dismissal that plaintiff failed to provide documentation that the special foods requested are mandated tenets of the Jewish faith.  Plaintiff asserts that the Assembly of Yahweh is not a Jewish sect and

---

[19]*Kay*, 500 F.3d at 1218 (quoting *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352 (10th Cir. 1997)).

[20]*Id.* at 1219, n.2 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006)).

[21]482 U.S. 78, 89-91 (1987).

[22]*Boles*, 486 F.3d at 1181.

at no time has he requested to celebrate the "Jewish holidays."  Although the faiths share observance of some of the same festivals, plaintiff contends the manner in which the festivals are celebrated differ.  The Court's assessment of the sincerity of plaintiff's beliefs is premature at this stage of the claim.  "The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment, . . . and therefore the issue of sincerity can rarely be determined on summary judgment."[23]

Moreover, it is unnecessary for plaintiff to show that special foods at the festivals were "necessary" to the practice of his religion if his belief in their use was sincerely held.  Although other circuits require that a prison regulation must interfere with a tenet or belief that is "central" or mandated by religious doctrine before a prisoner may state a claim under § 1983, the Tenth Circuit does not follow such a rule.[24]  In *LaFevers v. Saffle*,[25] the Circuit held that a prisoner's belief in religious dietary practice is constitutionally protected if the belief is "genuine and sincere," even if such dietary practices are not doctrinally "required" by the prisoner's religion. "'Sincerely held' is different from 'central,' and courts have rightly shied away from attempting to gauge how central a sincerely held belief is to the believer's religion."[26]  The fact that the requested feasts were not identified as mandated tenets in the KDOC's religious handbook as referenced in IMPP 10-110 does not support entry of summary judgment at this stage of the proceedings.  In so ruling, the Court takes no view on whether plaintiff can meet the other

---

[23]*Kay*, 500 F.3d at 1219 (quotation omitted).

[24]*Id*. at 1220.

[25]936 F.2d 1117, 1119 (10th Cir. 1991).

[26]*Id*. (quoting *Watts v. Fla. Int'l Univ.*, 05-13852, 495 F.3d 1289, 1295 (11th Cir. 2007)).

requirements for a claim for relief or whether the prison's restrictions are justified (1) by
reasonable penological interest, or (2) under step two of *Turner*.[27]

### B.    RLUIPA

RLUIPA provides, in relevant part, "[n]o government shall impose a substantial burden
on the religious exercise of a person residing in or confined to an institution," unless the burden
furthers "a compelling governmental interest," and does so by "the least restrictive means."[28]
Although the RLUIPA fails to define "substantial burden," the Tenth Circuit has relied on
RLUIPA's legislative history, which reveals that "substantial burden" in the statute is to be
interpreted by reference to First Amendment Jurisprudence.[29]  Thus, because plaintiff's
allegations satisfy the First Amendment's "substantial burden" standard, as discussed above,
they also state a claim for violation of RLUIPA, and the Court denies defendants' motion under
that statute as well.

### C.    Fourteenth Amendment

Plaintiff alleges that he was treated differently from other prisoners who were similarly
situated because Kairos, a "spiritually based mentoring program," are allowed to have pastries

---

[27]The question also remains whether defendants are entitled to qualified immunity in applying prison
regulations to plaintiff's religious practices.  Plaintiff must show at the time of his challenged action it was clearly
established that any regulation was unconstitutional. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Tenth Circuit
has recognized that an officer's "reliance on a state statute, regulation, or official policy that explicitly sanctioned the
conduct in question" may absolve the officer from knowing that his conduct was unlawful. *Roska v. Peterson*, 328
F.3d 1230, 1251-52 (10th Cir. 2003); *Lawrence v. Reed*, 406 F.3d 1224, 1232 (10th Cir. 2005).  The exception to
this rule is that "where a statute authorizes conduct that is 'patently violative of fundamental constitutional
principles,' reliance on the statute does not immunize the officer's conduct." *Id*.  The prison official defendants have
yet to file any responsive pleadings at this stage of the litigation outlining their other defenses to plaintiff's
complaint.

[28]42 U.S.C. § 2000cc-1(a)(1)-(2).

[29]*See Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 661 (10th Cir. 2006) (citing 146
CONG. REC. 7774-01, 7776).

from the Vo-tech Kitchen, and that the Jaycees and Stop Violence organizations are permitted to have an annual banquet with food from outside the prison.  Plaintiff also asserts that the Assembly of Yahweh was required to show a historical record for a three year period to justify its special food requests and that defendant Bratton "stepped outside her capacity and created unlawful policy."  Defendants contend that General Order 23-103 and IMPP 10-110 apply to all religious groups, regardless of affiliation, and that this policy is neutral on its face and as applied.

Under the Equal Protection Clause of the Fourteenth Amendment, a prisoner may not be denied a reasonable opportunity to pursue religious beliefs comparable to the opportunity afforded fellow prisoners who adhere to conventional religious beliefs.[30]  The Supreme Court has held that various religious groups are not required to have identical treatment.[31]  Instead, prison officials must only ensure that each religious group has a reasonable opportunity to exercise its religious beliefs.[32]

The Court finds that defendant has not demonstrated an equal protection violation. Although every religious group within the prison population need not be treated exactly the same way, IMPP 10-110 states that all religious groups are permitted an annual banquet, and if any religious group wishes to have more than one feast, it must be a mandated tenet in the KDOC religious handbook.  None of the programs or organizations cited by plaintiff are identified as

---

[30]*Cruz v. Beto*, 405 U.S. 319, 322 (1972).

[31]*Id*. at 322 n.2.

[32]*Id*.

religious groups.[33]  Plaintiff does not allege that these groups were permitted to have more than

one annual feast or banquet.  Nor does plaintiff allege that no other religious groups were

required to document previous feasts when the request was not identified as a mandated tenet in

the KDOC handbook.  Because plaintiff has not demonstrated that he was treated differently

from other prisoners who were similarly situated, his equal protection claim under the Fourteenth

Amendment must fail.[34]  Accordingly, the Court sustains defendants' motion as to plaintiff's

Fourteenth Amendment claim.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to

Dismiss, which has been converted to a Motion for Summary Judgment, is GRANTED with

respect to plaintiff's Fourteenth Amendment claim, and DENIED with respect to plaintiff's First

Amendment and RLUIPA claims.

IT IS SO ORDERED.

Dated this  18th  day of March 2008.

       S/ Julie A. Robinson    

Julie A. Robinson

United States District Judge

---

[33]These groups fall within the parameters of IMPP 10-108, which addresses inmate activities and recreation programs.

[34]*Neal v. Lewis*, 414 F.3d 1244, 1248 (10th Cir. 2005).